# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **JERALD WIGGINS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:14-cv-01950** |
| ) | **Judge Haynes / Knowles** |
| **METROPOLITAN GOVERNMENT OF** ) | |
| **NASHVILLE-DAVIDSON COUNTY,** ) | |
| **TENNESSEE, et al.** ) | |
| ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon two Partial Motions to Dismiss Plaintiff's Amended

Complaint (Docket Nos. 59, 68), and four Motions to Dismiss Plaintiff's Amended Complaint

(Docket Nos. 62, 71, 75, 79).  The first Partial Motion to Dismiss is filed by Defendant Matthew

Norris (Docket No. 59), while the second is filed by Defendant Kevin Crotts (Docket No. 68).

The first Motion to Dismiss is filed by Defendant Logan's Roadhouse, Inc. (Docket No. 62); the

second is filed by Defendants Tim Brewer, William Hampton, and James Dunaway (Docket No.

71); the third is filed by Defendant Metropolitan Government of Nashville-Davidson County,

Tennessee ("Metro Govt.") (Docket No. 75); and the fourth is filed by Defendant Keith

McNamara (Docket No. 79).  In support of their Motions, Defendants have filed corresponding

Memoranda of Law.  Docket Nos. 60, 63, 69, 72, 76, 80.

Plaintiff has filed a "Consolidated Response to Defendants' Motions to Dismiss."  Docket

No. 87. With leave of Court, Defendants have filed Replies. Docket Nos. 94, 95, 96, 97.[1]

Plaintiff, who is represented by counsel, filed his Amended Complaint on April 9, 2015, arguing that Defendants violated his Fourth and Fourteenth Amendment rights "pursuant to 42 U.S.C. 1983, 1985 and the common and statutory laws of the State of Tennessee." Docket No. 53. Specifically, Plaintiff avers as follows:

### GENERAL ALLEGATIONS

13.     On or about October 7, 2013, Plaintiff, who was parked at a Logan's Roadhouse restaurant located at 1715 Gallatin Pike North, Madison, was approached by one or more of the individually named Defendant police officers and accused of engaging in criminal conduct. Defendant police officers situated their vehicles behind Plaintiff's car such that Plaintiff could not leave and drew their service weapons and pointed them at the plaintiff.

14.     The person parked adjacent to the plaintiff, Jackie Carter, a white male, was approached by Defendant Crotts and questioned while Defendant Norris approached the plaintiff, an African American male, to be questioned.

15.     Jackie Carter claimed that the plaintiff sold him drugs at which point Defendant Crotts ordered Defendant Norris to arrest the plaintiff and place him in handcuffs, which Norris did.

16.     Plaintiff was handcuffed and made to sit on the ground beside his car.

17.     The other individually named defendant officers appeared on the scene and commenced to search Plaintiff's car.

18.     Four to five of the individually named officers, including Norris and Crotts, began putting on purple surgical gloves

---

[1] Docket No. 94 is a Joint Reply filed by Defendants Kevin Crotts and Matthew Norris. Likewise, Docket No. 96 is a Joint Reply filed by Defendants Tim Brewer, James Dunaway, William Hampton, and Keith McNamara.

and starting chanting "nuts and butts, nuts and butts."

19.     Defendant Crotts questioned the plaintiff if he had anything on him and said that if he did he was "going down". Crotts then told the plaintiff that he would be taken into the Logan's restroom to be searched.

20.     Either Defendant Crotts or Norris contacted their supervisor, Defendant Sgt. Dunaway, and obtained departmental approval to conduct a "more in-depth" search of the plaintiff in the Logan's restroom per departmental policy. Sgt. Dunaway, after being made aware of their intentions, approved the search in a public restroom.

21.     When Plaintiff protested and said he did not feel comfortable going into a public bathroom, Crotts pushed him through the door of the restaurant.

22.     Once in the restaurant, Crotts asked the General Manager of the Logan's, Gerald Dorfler, if they could use the restaurant bathroom for a search of the plaintiff to which the General Manager agreed.

23.     Once in the bathroom, Plaintiff, with both Crotts and Norris present, again protested by saying he did not feel comfortable being searched in a public restroom. Crotts pushed the plaintiff over a sink with one hand on his neck and with the other hand started to remove Plaintiff's pants and underwear. All while the plaintiff was still handcuffed.

24.     Plaintiff protested again and in desperation and with his pants and underwear already pulled down, said that he would squat and cough.

25.     In response, Crotts said, "no, that ain't going to get it. I got to go in you."

26.     Plaintiff started to resist and told Crotts that he was not going to let him go in his ass and to take him to the hospital.

27.     Crotts became extremely angry and hit the plaintiff with his

closed fist on his face.

28. Plaintiff yelled for help as loud as he could. In fact, Plaintiff yelled so loud that the General Manager heard it along with several patrons eating their meals in close proximity to the bathroom.

29. Upon hearing the yelling, the General Manager, Gerald Dorfler, went to the back of the restaurant where the other officers were congregated and told them of the yelling. Two of the other officers responded to the bathroom where Dorfler saw them go in.

30. Defendant Norris stood by or assisted while all of this was happening.

31. After the punch to the face, Plaintiff was thrown to the ground by both Crotts and Norris and put face down on the dirty public restroom floor with his pants and underwear pulled down.

32. While on the floor of the public restroom and held down by Norris, Crotts proceeded to penetrate the plaintiff's rectum with his finger in search of drugs.

33. After Crotts completed his rectal digital penetration, he and Norris further discussed what had just occurred while leaving the plaintiff on the floor fully exposed and still handcuffed with his hands behind his back.

34. Plaintiff was then escorted back outside where the other individually named officers taunted him about letting Jackie Carter go free.

35. In drafting the affidavit of complaint, Crotts failed to mention that he punched the plaintiff or that Plaintiff had yelled for help and resisted the search and instead deceived the judicial commissioner into finding probable cause by omission of pertinent facts.

36. Norris, likewise filed false reports failing to detail what had actually happened in the bathroom and claiming that Plaintiff gave his consent for a strip search.

4

37.    The other person detained at the Logan's, Jackie Carter, a white male who admitted that he was in possession of drugs, was not forced to submit to a digital rectal penetration like the plaintiff, who is African American. Crotts and Norris are both white as are all the other individually named defendants.

38.    Some of the restaurant patrons were so disturbed by Plaintiff's yelling for help that the General Manager had to offer them free meals to account for the disturbance.

39.    After the plaintiff was arrested and in jail, his girlfriend, Kara Childers, filed a complaint on Plaintiff's behalf with Metro's Office of Professional Responsibility.

40.    Even though Dunaway had given approval to conduct a more "in-depth" body search of the plaintiff in a public bathroom, he was assigned to conduct the investigation.

41.    As part of the investigation, Dunaway interviewed Norris on January 28, 2014. On January 29, 2014, the day after his interview where he was informed of the allegations against him, Norris drafted a supplemental report that claimed that after "retrieving the narcotics, Mr. Wiggins began to yell and scream in an attempt to create a disturbance." This part of the supplemental report was never mentioned in any previous statements made by Norris.

42.    However, in his answer to Plaintiff's complaint (D.E. 1), Norris claims that the plaintiff's "yelling loudly" occurred at "some point", not specifying that the yelling occurred after the search like in his supplemental report.

43.    As part of the investigation, Dunaway interviewed Crotts on January 28, 2014. Crotts referred to his original report and stated that everything he did was pursuant to department policy.

44.    Despite the other individually named officers being aware that Crotts and Norris were taking the plaintiff into the bathroom for a "more in-depth" body search and despite several of them seeing the plaintiff lying naked on the

bathroom floor, none submitted any use of force reports or reported the unlawful digital rectal search to superiors in the department, all in an apparent coverup of what had happened.

45.    Dunaway, after interviewing Norris and Crotts, to whom he had given permission to take the plaintiff into a public restroom for a "more in-depth" body search, concluded that both "officers conducted themselves with professionalism, and at no point was force used against Jerald Wiggins nor was he abused physically or verbally."

46.    Plaintiff was charged in a two count indictment. Count 1 alleged that the plaintiff was in possession with intent to sell over .5 grams of cocaine. This count was in reference to drugs pulled out of Plaintiff's rectum after the digital penetration by Crotts.

47.    Count 2 was for the sale of less than .5 grams of cocaine. This was in reference to the drugs that were alleged to have been sold to Jackie Carter in the Logan's parking lot before the plaintiff was ever taken into the restroom.

48.    On February 6, 2015, Plaintiff pled guilty to Count 2, relating to the sale of drugs in the parking lot.

49.    Count 1, relating to the drugs found after the digital penetration of the plaintiff's rectum in the restroom, was dismissed by the State.

50.    To this day, no officers have been disciplined or counseled in any way about this incident nor about conducting body cavity searches in public restrooms.

*Id.*

Plaintiff sues Defendants Logan's Roadhouse, Metro Govt., Crotts, Norris, Dunaway, Hampton, McNamara, and Brewer for violating his rights under § 1983, and Defendants Crotts, Norris, Dunaway, Hampton, McNamara, and Brewer for violating his rights under § 1985. *Id.* He further sues Defendant Logan's Roadhouse for negligence; Defendants Crotts and Norris for

assault and battery; and Defendants Metro Govt., Crotts, Norris, Dunaway, Hampton, McNamara, and Brewer for violation of Tenn. Code Ann. § 40-7-121.  Because Plaintiff does not specify the capacity in which he sues the individual Defendants, Plaintiff sues the individual Defendants solely in their official capacities as "sworn police officers."  *See id.; Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989).  Plaintiff seeks compensatory and punitive damages, injunctive relief, attorneys fees and costs, and other such relief as the Court deems just.  *Id.*

For the reasons discussed below, the undersigned recommends that: (1) Defendant Norris' Partial Motion to Dismiss (Docket No. 59) be GRANTED, and that Plaintiff's unlawful detention / false arrest claim and conspiracy claims against him be DISMISSED[2]; (2) Defendant Logan's Motion to Dismiss (Docket No. 62) be GRANTED, and that Plaintiff's claims against it be DISMISSED[3]; (3) Defendant Kevin Crotts' Motion for a Partial Dismissal of Plaintiff's First Amended Complaint (Docket No. 68) be GRANTED as to Plaintiff's unlawful detention / false arrest claim and conspiracy claims, and that those claims against him be DISMISSED, but DENIED AS MOOT with regard to Counts I, III, V, and VIII, as those claims are not asserted against him[4]; (4) Defendants Tim Brewer, William Hampton, and James Dunaway's Motion to

---

[2] Because Defendant Norris' Motion is a *Partial* Motion to Dismiss which seeks dismissal of Plaintiff's unlawful detention / false arrest claims and conspiracy claims, only those claims should be dismissed; Plaintiff's remaining claims against him should proceed at this juncture.

[3] As noted, Plaintiff's sole federal claim against Defendant Logan's is his § 1983 claim. Because the undersigned recommends that Defendant Logan's Motion to Dismiss be granted, the undersigned recommends that this Court should decline to exercise its supplemental jurisdiction over Plaintiff's negligence claims against Defendant Logan's, and Defendant Logan's should be terminated as a party to this action.

[4] Because Defendant Crotts' Motion seeks *partial* dismissal of the claims discussed, only those claims should be dismissed; Plaintiff's remaining claims against him should proceed at this

Dismiss (Docket No. 71) be GRANTED, and that Plaintiff's claims against them be DISMISSED; (5) Defendant Metro Govt.'s Motion to Dismiss (Docket No. 75) be GRANTED, and that Plaintiff's claims against it be DISMISSED; and (6) Defendant Keith McNamara's Motion to Dismiss (Docket No. 79) be GRANTED, and that Plaintiff's claims against him be DISMISSED.

## II.  Law

### A.  Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.  *Id.*  A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient.  *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face."  *Id*. At 1965, 1974.  *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The *Iqbal* Court stated in part as follows:

---

juncture.

> Two working principles underlie our decision in *Twombly*. First,
> the tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of the cause of action,
> supported by mere conclusory statements, do not suffice . . . . Rule
> 8 marks a notable and generous departure from the hyper-technical,
> code-pleading regime of a prior era, but it does not unlock the
> doors of discovery for plaintiff armed with nothing more than
> conclusions. Second, only a complaint that states a plausible claim
> for relief survives a motion to dismiss . . . . Determining whether a
> complaint states a plausible claim for relief will, as the Court of
> Appeals observed, be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common
> sense. . . . But where the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct, the
> complaint has alleged - but it has not "show[n]" - "that the pleader
> is entitled to relief."

556 U.S. at 678-79 (citations omitted).

## B. 42 U.S.C. § 1983

Plaintiff alleges violations of his Fourth and Fourteenth Amendment rights pursuant to 42

U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S.

42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct.

1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,*

474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,*

436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of

acting under color of state law requires that the defendant in a § 1983 action have exercised

power "possessed by virtue of state law and made possible only because the wrongdoer is clothed

with the authority of state law."  *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313

U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**C.  42 U.S.C. § 1985(3)**

Generally, § 1985 prohibits class-based conspiracies to deny an individual his civil rights.

*See* 42 U.S.C. § 1985.

42 U.S.C. § 1985 states as follows:

> (1) Preventing officer from performing duties
>
> If two or more persons in any State or Territory conspire to
> prevent, by force, intimidation, or threat, any person from
> accepting or holding any office, trust, or place of confidence under
> the United States, or from discharging any duties thereof; or to
> induce by like means any officer of the United States to leave any
> State, district, or place, where his duties as an officer are required
> to be performed, or to injure him in his person or property on
> account of his lawful discharge of the duties of his office, or while
> engaged in the lawful discharge thereof, or to injure his property so
> as to molest, interrupt, hinder, or impede him in the discharge of
> his official duties;
>
> (2) Obstructing justice; intimidating party, witness, or juror
>
> If two or more persons in any State or Territory conspire to deter,
> by force, intimidation, or threat, any party or witness in any court
> of the United States from attending such court, or from testifying to
> any matter pending therein, freely, fully, and truthfully, or to injure
> such party or witness in his person or property on account of his

having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

*Id.*

The Sixth Circuit enumerated the following elements of a conspiracy claim under § 1985:

(1)     a conspiracy involving two or more persons;

(2)     for the purpose of depriving, directly or indirectly, a person
        or class of persons of the equal protection of the laws; and

(3)     an act in furtherance of the conspiracy;

(4)     which causes injury to a person or property, or a
        deprivation of any right or privilege of a citizen of the
        United States.

*See, e.g., Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir.

2007); *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534,

1538-39 (6th Cir. 1987); *Johnson v. Hills & Dales Gen.* Hosp., 40 F.3d 837, 839 (6th Cir. 1994).

Courts have construed the language of the second element, above, as requiring plaintiffs

to allege that the conspiracy in question was motivated by a class-based animus, such as race.

*See Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).

Section 1985(3) conspiracy claims must be pled with some degree of specificity.  *See,

Ctr. for Bio-Ethical Reform, Inc.*, 477 F.3d at 832; *Vakilian*, 335 F.3d at 518; *Gutierrez*, 826 F.2d

at 1538-39.

## D.  Qualified Immunity

The individual Defendants have asserted that they are qualifiedly immune from liability.

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability."  *Saucier v.

Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  Qualified immunity

generally shields government officials performing discretionary functions from liability for civil

damages "insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800,

818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1983).  The right at issue "must have been

articulated with a significant degree of particularity," (*Eugene D. v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989), so that it is sufficiently clear to a reasonable official that his or her conduct would violate the right at issue. Qualified immunity is available as long as the official's actions "could reasonably have been thought consistent with the rights [he or she is] alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987).

The initial inquiry and threshold question, according to the Supreme Court, is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.*, *citing Siegert v. Gilley,* 500 U.S. 226, 232, 111 S. Ct. 1789, 1973, 114 L. Ed. 2d 277 (1991). If no constitutional right was violated, there is no necessity for further inquiry. *Id.*

A critical question is whether "any official in the defendants' position would understand that what he did violated those rights." *O'Brien v. City of Grand Rapids*, 23 F. 3d 990, 999 (6th Cir. 1994). Qualified immunity, therefore, "does not turn on the subjective good faith of the official; rather, it turns on the 'objective legal reasonableness' of his actions, assessed in light of the legal rules that were 'clearly established' at the time the actions were taken." *Id.,* (quoting *Harlow*, 457 U.S. at 818-19). "If officers of reasonable competence could disagree on whether the conduct violated the plaintiff's rights," qualified immunity will apply. *Id.*, (quoting *Grossman v. Allen*, 950 F. 2d 338, 341 (6th Cir. 1991)(citations omitted).

### III.  Analysis

As noted, the instant Report and Recommendation addresses six pending Motions. The undersigned will address each in turn.

**A.  Defendant Norris' Partial Motion to Dismiss (Docket No. 59)**

Defendant Matthew Norris filed his Partial Motion to Dismiss and accompanying Memorandum of Law on April 17, 2015, arguing that: (1) Plaintiff's unlawful detention / false arrest claim brought pursuant to 42 U.S.C. § 1983 should be dismissed because Plaintiff pled guilty to the criminal matter that underlies this cause of action, thereby conclusively establishing probable cause for his arrest; and (2) Plaintiff's conspiracy claim brought pursuant to 42 U.S.C. § 1985(3) should be dismissed because Plaintiff has not plead that claim with the requisite specificity, as his Amended Complaint fails to include any facts establishing how a conspiracy was purportedly formed, much less that a conspiracy existed.  Docket Nos. 59, 60.  Defendant Norris further contends that Plaintiff's conspiracy claim is barred by the intra-corporate conspiracy doctrine.  *Id.*

As noted above, Plaintiff has filed one Consolidated Response addressing all six of the instant Motions.  Docket No. 87.  As pertains to the unlawful detention / false arrest claim arguments raised by Defendant Norris, Plaintiff concedes that he does not contest the lawfulness of his initial detention, and the "Court can grant the motion to dismiss on this sub-claim."  *Id.*, p. 2-3.[5]  Regarding Defendant Norris' civil rights conspiracy claim arguments, Plaintiff maintains that he pled eleven specific allegations that sufficiently establish the requisite elements of this claim, such that his § 1985 claim may survive Defendant Norris' Partial Motion to Dismiss.  *Id.*, p. 6-8.  Plaintiff further argues that Defendant Norris' citation of the "intra-corporate conspiracy

---

[5] Plaintiff concedes that he was under full arrest at the time he was taken into the Logan's restroom and does not contest the lawfulness of the original detention and arrest; he does, however, maintain that his body cavity search that took place inside the Logan's restroom was unlawful and that he was the victim of excessive force during that body cavity search.  Docket No. 87, p. 5.

doctrine" is misplaced, as: (1) Plaintiff does not allege that the individual Defendants conspired with the municipal defendant, Defendant Metro Govt., to violate his rights, but rather, alleges that the individual Defendants conspired with each other to violate his rights; (2) it cannot "possibly be construed that the individual police officers who are alleged to have raped the plaintiff in the Logan's restroom were acting on behalf of the municipal corporation while they were committing the rape"; and (3) it cannot be construed that the individual police officers were "pursuing [the municipality's] lawful business" in the process. *Id.*, p. 8-9. Plaintiff argues, therefore, that the individual Defendants can be held liable for conspiring with each other to violate his rights. *Id.*

Defendant Norris has filed a Joint Reply with Defendant Kevin Crotts, reiterating Plaintiff's concession that he did not intend to include language about unlawful detention / false arrest in his Amended Complaint, and asserting that the eleven facts cited by Plaintiff as support for his argument that he has sufficiently pled conspiracy actually fail to do so. Docket No. 94. Specifically, Defendant Norris contends that: (1) "merely being present at the scene of a constitutional violation does not establish a conspiracy"; and (2) "merely communicating about a particular situation or incident does not establish a conspiracy." *Id.*, p. 3. Defendant Norris maintains that Plaintiff's allegations "do not in any way suggest an agreement to violate Plaintiff's equal protection rights or any sort of shared racial animus;" and in fact, fail to "suggest an agreement about anything at all." *Id.*, p. 4. Defendant Norris asserts that the allegations of Plaintiff's Amended Complaint instead "simply suggest that the officers in the same unit worked together on an arrest and search." *Id.* Defendant Norris reiterates his contention that Plaintiff's conspiracy claim should be dismissed. *Id.*

15

As discussed above, in order to allege a viable conspiracy claim under 42 U.S.C. § 1985(3), Plaintiff must plead, with some degree of specificity: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *See, e.g., Ctr. for Bio-Ethical Reform, Inc.*, 477 F.3d at 832; *Vakilian*, 335 F.3d at 518; *Gutierrez*, 826 F.2d at 1538-39. As can be seen in the factual allegations set forth in Plaintiff's Amended Complaint, recounted above, Plaintiff has failed to so plead. Accordingly, Plaintiff cannot sustain his conspiracy claim against Defendant Norris.

Because Plaintiff does not contest dismissal of his unlawful detention / false arrest claim, and because Plaintiff has failed to plead the elements of conspiracy with the requisite specificity, these claims should be DISMISSED, and Defendant Norris' Partial Motion to Dismiss (Docket No. 59) should be GRANTED.

## B. Defendant Logan's Roadhouse Inc.'s Motion to Dismiss (Docket No. 62)

Defendant Logan's Roadhouse, Inc. ("Logan's"), filed its Motion to Dismiss, supporting Memorandum of Law, and Collective Exhibits A-D, on April 21, 2015, arguing, *inter alia*, that Plaintiff's claims against it should be dismissed because: (1) Plaintiff does not allege that Defendant Logan's had any involvement in the surveillance, apprehension, arrest of Plaintiff, or the decision by the police to conduct either a search or a body cavity search; (2) Plaintiff does not allege that Logan's knew that police intended to conduct a body cavity search (Plaintiff alleges only that the body cavity search was illegal); (3) Plaintiff does not factually allege that Logan's

16

was a state actor; (4) Plaintiff does not allege that the Logan's manager acted pursuant to a company rule, policy, or procedure when he allegedly allowed the officers to use the restaurant bathroom; and (5) Plaintiff does not allege that Logan's acquiesced to any alleged unlawful conduct of its manager.[6]  Docket Nos. 62, 62-1, 62-2, 62-3, 62-4, 63.

Plaintiff responds, "while it is accurate to say that Plaintiff 'does not allege that the Logan's manager knew that the officers in the restroom were involved in any unlawful conduct or who or why someone was yelling', the 'General Manager' clearly was aware that the police intended to use Logan's restroom to conduct a search of a handcuffed individual and agreed to allow his restaurant's restroom to be the location of the search."  Docket No. 87, p. 20.  Plaintiff contends that "Logan's granting permission to the police to use its bathroom for what clearly was an intended search of a handcuffed African American by white police officers was the proximate cause of his injuries in that bathroom."  *Id.*

Regarding Defendant Logan's assertion that Plaintiff failed to factually allege that Logan's was a state actor, Plaintiff responds, "the complaint clearly puts Logan's on notice that it 'act[ed] as a government agent by allowing the use of its premises for an intrusive body cavity search and under color of law . . .' violated Plaintiff's rights."  *Id.*, p. 21.  Plaintiff argues that Logan's does not have to be an officer of the State to act "under color of law," but rather, can simply be a "willful participant in joint activity with the State or its agents."  *Id.*, *citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970).  Plaintiff notes that the Sixth Circuit has held that

---

[6] Defendant Logan's also argues that this Court lacks subject matter jurisdiction over Plaintiff's claims against it because Plaintiff's claims are barred by *Heck v. Humphrey*.  Because the undersigned recommends dismissal based upon substantive grounds, the undersigned will not discuss Defendant Logan's *Heck* arguments, Plaintiff's responses thereto, or Defendant Logan's arguments in reply.  *See* Docket Nos. 62, 87, 97.

"Private persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of § 1983." *Id.*, *citing Hooks v. Hooks,* 771 F.2d 935, 943 (6th Cir. 1985). Plaintiff asserts that the Sixth Circuit "has recognized as many as four tests to aid courts in determining whether challenged conduct is fairly attributable to the State: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test." *Id., citing Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298 (2001).

Plaintiff states:

> The state-compulsion test requires "proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly to take a particular action so that the choice is really that of the state." *Amer. Postal Workers Union, Local 96 v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). The nexus test "requires a sufficiently close relationship between the state and the private actor so that the action taken may be attributed to the state." *Id.* A private individual acts under color of state law when "he has acted together with or has obtained significant aid from state officials." *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 937 (1982).
>
> Thus, the complaint, by alleging that the Logan's General Manager agreed to the police request to use the Logan's bathroom to conduct a law enforcement search for drugs of a handcuffed individual, infers that the general manager "acted together with" the state officials. He also effectively turned the Logan's restaurant into a police precinct or jail where persons in custody are searched for contraband.

*Id.*, p. 21.[7]

As to Defendant Logan's argument that a private party cannot be held liable under a theory of *respondeat superior*, Plaintiff argues that he "makes no such derivative § 1983 claim,"

---

[7] Plaintiff does not discuss the public function test. *See id.*

but instead, argues that "a private actor can be liable for a policy or custom of that private party under § 1983 the same as a municipality." *Id.*, p. 22, *citing Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff contends that the decision to allow the police to search him in the Logan's restroom was made by the General Manager of that Logan's facility. *Id.* Plaintiff argues that the General Manager would have been the highest ranking Logan's employee on site and therefore was the "official policymaker" who decided whether the facility's restroom could be used by police to conduct searches, such that liability can impugn. *Id.*

In its Reply, Defendant Logan's reiterates its argument that Plaintiff's Amended Complaint simply alleges that the officers brought Plaintiff into the Logan's restaurant and asked to use the restroom to search him; it does not allege that the restaurant manager knew why the search was being conducted, whether Plaintiff had consented to the search, the type of search to be conducted, or that an allegedly illegal body cavity search would be conducted, nor does it allege that the Logan's manager was either in the bathroom during, or in any way participated in, the search. Docket No. 97, p. 2. Defendant Logan's contends that absent more, Plaintiff's allegations fail to state a claim against it. *Id.*

Defendant Logan's argues that Plaintiff's Response specifically:

- does not allege that the Logan's manager knew that the officers intended to or would be involved in any unlawful conduct in the restroom (Pl.'s Resp., p. 21, D.E. No. 87);

- does not allege the manager knew what type of search would be conducted (Pl.'s Resp., p. 20, D.E. No. 87);

- fails to identify any custom, policy, or practice of Logan's that proximately caused a violation of Plaintiff's constitutional rights (Pl.'s Resp., p. 21, D.E. No. 87); and

- fails to allege (or even acknowledge) that the Davidson County Criminal Court found that Plaintiff had consented to the search, that the officers had probable cause to make a search, that the officers did not violate Tenn. Code Ann. § 40-7-121 in conducting the search, and that Plaintiff had cocaine outside of his body between his buttocks, not in his anus (Pl.'s Resp., p. 20, at Note 10; *see also* Ex. C to Motion to Dismiss, D.E. No. 62-3, pg. 7 of 7).

*Id.*, p. 8.

Defendant Logan's further argues that Plaintiff's Response does not address the Amended Complaint's failure to allege that:

- Plaintiff was a customer at the restaurant;

- anyone at Logan's knew about or had any involvement in the surveillance, apprehension, or decision to search Plaintiff;

- Logan's incited, instigated, or directed any search of Plaintiff;

- Plaintiff ever expressed an objection to the Logan's manager about being searched;

- Logan's manager was inside the bathroom during the purported search.

*Id.*, p. 9.

Defendant Logan's additionally argues that Plaintiff's claims against it should be dismissed because Plaintiff's Amended Complaint fails to actually allege state action by Logan's, fails to identify which test applies to Logan's, fails to identify where such conduct is alleged in the Amended Complaint, and fails to identify any specific joint action between Metro Govt. and Logan's. *Id.* Finally, Defendant Logan's argues that Plaintiff's Amended Complaint fatally fails to allege any wrongful conduct by Logan itself. *Id.* Defendant Logan's concedes that a corporation can be held liable under § 1983 if the complaint sufficiently alleges an

"impermissible policy" or a "constitutionally forbidden" rule or procedure of the corporation that was the "moving force of the constitutional violation." *Id.*, p. 10. Defendant Logan's contends, however, that Plaintiff's Amended Complaint makes no reference whatsoever to any custom or policy of Logan's and does not assert that Logan's acted pursuant to any custom or policy. *Id., citing* Docket No. 53, Amended Complaint, ¶¶ 22, 28-29, 63-64. Defendant Logan's notes that Plaintiff's Amended Complaint also fails to factually allege that Logan's authorized or acquiesced in the purported conduct of its manager. *Id.*

As noted above, Plaintiff's sole federal claim against Defendant Logan's is that Defendant Logan's violated his rights under 42 U.S.C. § 1983. Docket No. 53. Plaintiff also asks this Court to exercise its supplemental jurisdiction and hold Defendant Logan's liable under a negligence theory based on premises liability.[8] *Id.*

As an initial matter, the parties concede that Defendant Logan's cannot be held liable under § 1983 upon a *respondeat superior* theory. Thus, in order to hold Defendant Logan's liable for its General Manager allowing the police to use its restroom to search Plaintiff, Plaintiff, in his Amended Complaint, must allege the existence of an "impermissible [Logan's] policy" or a "constitutionally forbidden" Logan's rule or procedure that was the "moving force of the constitutional violation." *See, e.g., Monell*, 436 U.S. at 694; *Street v. Corrections Corp. Of Am.,* 102 F.3d 810, 818 (6th Cir. 1996); *Hutchinson v. Metro. Gov't of Nashville and Davidson Cnty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010). Plaintiff's Amended Complaint, however, does

_____

[8] In his Consolidated Response, Plaintiff details the arguments relating to his negligence claim. Docket No. 87. Because the undersigned recommends granting Defendant Logan's Motion to Dismiss, the undersigned further recommends that the Court decline to exercise its supplemental jurisdiction over this negligence claim. Accordingly, the undersigned will not recount Plaintiff's arguments on this point herein.

not reference any official custom or policy of Logan's, much less allege that any official custom or policy of Logan's was the "moving force of the constitutional violation." Moreover, Plaintiff's Amended Complaint does not allege wrongful conduct by Defendant Logan's itself; it does not allege that Defendant Logan's authorized, participated in, or acquiesced to the conduct of its General Manager. Absent such allegations, Plaintiff simply cannot sustain his § 1983 claim against Defendant Logan's, and Defendant Logan's Motion to Dismiss should be GRANTED.

## C. Defendant Kevin Crotts' Motion for a Partial Dismissal of Plaintiff's First Amended Complaint (Docket No. 68)

Defendant Crotts' filed his Motion for a Partial Dismissal of Plaintiff's First Amended Complaint and accompanying Memorandum of Law on April 22, 2015, arguing that: (1) Count I of Plaintiff's Amended Complaint applies only to Defendant Metro Govt and should therefore be dismissed against him; (2) Count II of Plaintiff's Amended Complaint (his unlawful detention / false arrest claim brought pursuant to 42 U.S.C. § 1983) should be dismissed because Plaintiff pled guilty to crime for which he asserts he was unlawfully detained, thereby conclusively establishing probable cause for his arrest; (3) Count III of Plaintiff's Amended Complaint is directed only to Defendant Logan's and therefore should be dismissed against him; (4) Count IV of Plaintiff's Amended Complaint (his conspiracy claim brought pursuant to 42 U.S.C. § 1985(3)) should be dismissed because it is barred by the intra-corporate conspiracy doctrine and was not plead with sufficient specificity; (5) Count V of Plaintiff's Amended Complaint (a state-law negligence claim) is directed only to Defendant Logan's and therefore should be dismissed against him; (6) Count VI of Plaintiff's Amended Complaint (a state-law claim for assault and battery) should only proceed if an underlying federal claim proceeds; (7) Count VII

of Plaintiff's Amended Complaint (a state-law claim against the individual Defendants brought under Tenn. Code Ann. § 40-7-121) should only proceed if an underlying federal claim proceeds; and (8) Count VIII of Plaintiff's Amended Complaint (a state-law claim against Defendant Metro Govt. brought under Tenn. Code Ann. § 40-7-121) is directed only to Defendant Metro Govt. and therefore should be dismissed against him. Docket Nos. 68, 69. Accordingly, Defendant Crotts seeks dismissal of Counts I, III, IV, V, and VIII in their entirety, as well as that portion of Count II that alleges unlawful detention against him. *Id.*

As noted above, Plaintiff has filed one Consolidated Response addressing all six of the instant Motions. Docket No. 87. As relates to Defendant Crotts' Motion, Plaintiff responds that he is "perplexed" by Defendant Crotts' request to dismiss "counts that clearly do not apply to him." *Id.*, p. 26-27. Plaintiff states that he "can only respond to this strange request by saying that it just doesn't matter if the Court dismisses those counts that clearly do not pertain to him or not." *Id.*, p. 27. Regarding his unlawful detention claim, Plaintiff reiterates that he does not make a claim of unlawful detention or arrest related to his charge of selling cocaine and the inclusion of that claim in the Amended Complaint was a "mere oversight." *Id.* With respect to his conspiracy claim, Plaintiff incorporates by reference his responses to Defendant Norris' conspiracy arguments, set forth above. *Id.*

As discussed, Defendant Crotts has filed a Joint Reply with Defendant Norris. Docket No. 94. Because the arguments in that Reply have been set forth in detail above, they will not be recounted here.

Inasmuch as Defendant Crotts seeks dismissal of Counts I, III, V, and VIII, those claims are explicitly not levied against Defendant Crotts, and do not contain allegations against him that

can be dismissed.  Accordingly, Defendant Crotts' Motion for a Partial Dismissal should be DENIED AS MOOT with regard to Counts I, III, V, and VIII.  For the reasons discussed above with Defendant Norris' Partial Motion to Dismiss, however, Defendant Crotts' Motion for Partial Dismissal should be GRANTED with regard to the unlawful detention claim in Count II and the conspiracy claim in Count IV.  The remaining claims for which Defendant Crotts' does not move for dismissal should be permitted to proceed at this juncture.

**D.  Defendants Tim Brewer, William Hampton, and James Dunaway's Motion to Dismiss (Docket No. 71)**

Defendants Tim Brewer, William Hampton, and James Dunaway filed their Motion to Dismiss, accompanying Exhibits, and supporting Memorandum of Law on April 23, 2015, arguing that the only claims Plaintiff levies against them are: (1) Count II, the unlawful detention claim brought under § 1983; (2) Count IV, the conspiracy claim brought under § 1985(3); and (3) Count VII, the state-law claim brought under Tenn. Code Ann. § 40-7-121 for an unlawful body cavity search.  Docket Nos. 71, 71-1, 71-2, 71-3, 72.  Defendants Brewer, Hampton, and Dunaway argue that these claims should be dismissed as to them because: (1) for the § 1983 claim, they are protected by qualified immunity since Plaintiff has failed to plead that the actions of these individual officers violated his well-established constitutional rights; (2) for the § 1985(3) claim, the intra-corporate conspiracy doctrine applies and bars the claim because they work for the Metro Govt. and were acting within the scope of their employment; and (3) these individual officers did not conduct or "cause to be conducted" a body cavity search, such that they cannot be held liable under Tenn. Code Ann. § 40-7-121.  Docket No. 71.

As discussed, Plaintiff has filed one Consolidated Response addressing all six of the

instant Motions.  Docket No. 87.  Responding to Defendants Brewer, Hampton, and Dunaway's

argument that they are entitled to qualified immunity, Plaintiff states:

> . . . Plaintiff clearly alleges that four to five officers taunted him as
> they sang "nuts and butts" repeatedly.  This included Crotts and
> Norris, so three other officers were involved in this action which
> indicates they knew what was about to happen to the plaintiff.
> Excluding Norris and Crotts and excluding Dunaway who was not
> present at the scene, leaves only Hampton, Brewer and McNamara
> - the remaining three.  Thus, Plaintiff clearly implies, by process of
> elimination, that Hampton and Brewer knew what was about to
> happen and failed to intervene and also made it possible by
> remaining outside to ostensibly guard the scene.  It is also implied
> that they were there as Crotts and Norris began putting on surgical
> gloves which could only be for the purpose of intruding in a body
> cavity.  Hampton and Brewer clearly could have intervened and
> insisted that Plaintiff be taken to a more private and official
> location for the strip search or body cavity search, as the case may
> be. . . . This is not a case of "mere presence". . . . Singing "nuts and
> butts" and watching as two fellow officers put on blue surgical
> gloves and push a handcuffed arrestee into a public restroom would
> have put a reasonable officer on notice that something more than a
> pat-down was about to occur.

*Id.*, p. 28 (footnote omitted).

Plaintiff also argues that "what happened was not merely an unconstitutional search," but

rather, "was aggravated rape."  *Id.*, p. 29.  Plaintiff contends that it "is common sense that a

police officer may not rape a handcuffed arrestee," such that it was "clearly established" that

these Defendants had a duty to intervene to stop an allegedly unconstitutional search.  *Id.*

With regard to the conspiracy claim, Plaintiff incorporates by reference his arguments on

this point, set forth above.  As to his state-law claim against these Defendants brought pursuant

to Tenn. Code Ann. § 40-7-121, Plaintiff responds:

> the term "cause" in T.C.A. 40-7-121 is not defined and defendants
> do not cite to any authority that supports their argument that this

statute only creates a cause of action against those who "actually engaged in the body cavity search". To the contrary, it also creates a cause of action against the municipal employer which could not have "actually" engaged in the body cavity search. At a minimum, these defendants "caused" the unlawful penetration by supporting Crotts and Norris in what they were about to do and chanting in unison "nuts and butts" as a rallying cry.

*Id.*, p. 30.

Defendants Brewer, Hampton, and Dunaway have filed a Reply, that is also joined by Defendant Keith McNamara. Docket No. 96. In their Reply, these Defendants respond:

Plaintiff relies on three facts to establish that the individual officers knew an unconstitutional body cavity search would occur and, therefore, should have insisted that Plaintiff "be taken to a more private and official location for the strip search or body cavity search, as the case may be." (Docket No. 87, Page ID# 956). Specifically, Plaintiff alleges that 1) the chanting of "nuts and butts", 2) Officers Norris and Crotts putting on surgical gloves, and 3) taking Plaintiff to a public restroom, establish that the Individual Defendants were on notice that more "than a pat-down was about to occur." *Id.* Each of those facts standing alone, or taken together, do not constitute a constitutional violation. Nor do they support an inference that the individual officers knew that a "digital rectal search" would occur. . . .

The Amended Complaint contains no factual allegation linking the chanting of exposed body parts to what Plaintiff alleges actually happened - a digital rectal search. Similarly, the simple act of putting on gloves before searching a known drug dealer does not equal notice that a body cavity search would occur. Finally, taking Plaintiff to the bathroom was consistent with Metro Nashville Police Department ("MNPD") policy. . . . Absent specific well-pleaded factual allegations that the Individual Defendants were on notice that a digital rectal search would occur, the Section 1983 claim against the Individual Defendants must be dismissed.

*Id.*, p. 2.

Defendants note that Plaintiff's Response does not challenge Defendant Dunaway's

assertion that his approval of a strip search did not violate Plaintiff's rights. *Id.*, p. 3. Defendants contend that the Amended Complaint itself actually specifies that it was a strip search, not a body cavity search, for which Defendant(s) Crotts and/or Norris sought approval. *Id., referencing* Amended Complaint, ¶ 20. Defendants maintain that Plaintiff's Amended Complaint contains no arguments that a strip search was not warranted and/or should not have been approved. *Id.* Defendants argue, therefore, that all claims against Defendant Dunaway for his approval of the search should be dismissed. *Id.*

Addressing Plaintiff's Response to their argument that they are qualifiedly immune, these Defendants argue that Plaintiff has not met his burden of showing that they had a duty to intervene under the circumstances presented herein. *Id.*, p. 4. Regarding Plaintiff's conspiracy claim, Defendants argue that "[i]t is only because of their status as police officers that all of the individual Defendants came into contact with the Plaintiff, arrested him, and searched him," such that "their actions took place within the ambit of their employment as police officers" and the intra-corporate conspiracy applies, barring Plaintiff's § 1985(3) claim. *Id.*, p. 5-6.

Turning first to Defendant Dunaway, Plaintiff concedes that Defendant Dunaway was not present on the scene at the Logan's restaurant, but nevertheless seeks to impose liability upon him as the supervisor, for approving the request of Defendants' Crotts and Norris to conduct a strip search of Plaintiff prior to arriving on the scene and evaluating the circumstances surrounding the request. Docket No. 87, p. 28. While Plaintiff argues that Defendant Dunaway's approval of the search request before responding to the scene and evaluating the circumstances surrounding the request violates Metro policy, it simply does not rise to a violation of Plaintiff's rights under § 1983. There is nothing in the record to demonstrate that Defendant Dunaway had

any knowledge that any search beyond the requested strip search would occur. He was not present on the scene, nor did he participate in any of the events of which Plaintiff complains. Additionally, for the reasons discussed above, Plaintiff cannot sustain his § 1985(3) conspiracy claim. Accordingly, Plaintiff's federal claims should be DISMISSED against Defendant Dunaway. Absent a sustainable federal claim, this Court should decline to exercise its supplemental jurisdiction over Plaintiff's state-law claim against him.

Turning next to Defendants Brewer and Hampton, Plaintiff's arguments relating to why they are not qualifiedly immune are conclusory and speculative. Plaintiff acknowledges that:

> . . . Plaintiff clearly *implies*, *by process of elimination*, that Hampton and Brewer knew what was about to happen and failed to intervene and also made it possible by remaining outside to *ostensibly* guard the scene. It is also *implied* that they were there as Crotts and Norris began putting on surgical gloves which *could only be for the purpose* of intruding in a body cavity.

Docket No. 87, p. 28 (emphasis added).

Plaintiff also conclusorily and speculatively argues that "[s]inging 'nuts and butts' and watching as two fellow officers put on blue surgical gloves and push a handcuffed arrestee into a public restroom would have put a reasonable officer on notice that something more than a pat-down was about to occur." *Id.* Plaintiff characterizes his digital search as "aggravated rape" and argues that the "common sense" knowledge that an "aggravated rape" would occur after "[s]inging 'nuts and butts' and watching as two fellow officers put on blue surgical gloves and push a handcuffed arrestee into a public restroom" imposes liability upon Defendants Brewer and Hampton for failing to intervene, even though Plaintiff acknowledges that Defendants Brewer and Hampton were *outside* the restroom when the search occurred.

28

As noted, conclusory allegations are not enough to impose liability under § 1983. Taking the facts in the light most favorable to Plaintiff, Plaintiff's factual allegations simply do not demonstrate that Defendants Brewer and/or Hampton violated Plaintiff's constitutional rights. Thus, Plaintiff cannot sustain his § 1983 claims against them, and those claims should be DISMISSED. Moreover, Plaintiff has not rebutted Defendants affirmative defense of qualified immunity. Additionally, for the reasons discussed above, Plaintiff cannot sustain his § 1985(3) conspiracy claim and that claim should likewise be DISMISSED. Because Plaintiff's federal claims should be DISMISSED against Defendants Brewer and Hampton, this Court should decline to exercise its supplemental jurisdiction over Plaintiff's state-law claim against them. The undersigned therefore recommends that the Motion to Dismiss filed by Defendants Tim Brewer, William Hampton, and James Dunaway (Docket No. 71) be GRANTED.

**E.  The Metropolitan Government's Motion to Dismiss (Docket No. 75)**

Defendant Metro Govt. filed its Motion to Dismiss and accompanying Memorandum of Law on April 23, 2015, arguing that Plaintiff's claims against it[9] should be dismissed because: (1) Plaintiff has now been convicted of the crime for which he claims he was unlawfully detained and searched; (2) the Amended Complaint fails to plead sufficient facts to support a municipal liability claim under § 1983; and (3) absent a sustainable federal claim, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claim. Docket Nos. 75, 76.

As noted, Plaintiff has filed one Consolidated Response addressing all six of the instant

---

[9] Plaintiff levies two claims against Defendant Metro Govt. specifically: Count I, which is a § 1983 claim against it for failure to adequately train and supervise its officers with respect to detentions without probable cause; and Count VIII, a state-law claim brought under Tenn. Code Ann. § 40-7-121.

Motions. Docket No. 87. Regarding Defendant Metro Govt. specifically, Plaintiff responds that he has withdrawn the unlawful detention claim, but continues to maintain that excessive force was used in the unlawful body cavity search and when Defendant Crotts allegedly punched him in the face. *Id.*, p. 31. Plaintiff argues that the search was carried out in contravention of official Metro Govt. policy, which dictates that such searches be conducted in a private place. *Id.*, p. 32. Plaintiff contends that he has sufficiently pled facts to establish a plausible claim for municipal liability because:

> Metro thus should have known that the events did not occur pursuant to policy and failed to correct the problem or train its officers on what to do in the future. Indeed, even conducting a strip search in a public restroom is in violation of policy and conducting it where the event will be challenged by a police officer and a suspect is ripe with risk. Thus, given all these facts as true, a reasonable jury - especially one that believes Plaintiff was raped by Crotts with the assistance of Norris - could conclude that this was pursuant to an utter failure to train and to control its officers from crossing the line.

*Id.*

Defendant Metro Govt. has filed a Reply to Plaintiff's Consolidated Response. Docket No. 95. In its Reply, Defendant Metro Govt. argues, "As for his municipal liability claim related to the alleged body cavity search, it fails because Plaintiff has provided no well-pleaded factual allegations that this search was anything other than the act of a few "rogue" officers who violated policy rather than pursuant to any unconstitutional custom, policy or practice of the Metropolitan Government." *Id.*, p.1. Defendant Metro Govt. further contends:

> Here, Plaintiff makes the over-arching allegation that the Metropolitan Government inadequately investigates incidents of body cavity searches. Doc. No. 53 at ¶¶ 52, 54. Yet Plaintiff does not identify or describe in any manner any other alleged body

cavity searches by MNPD officers that have occurred. Nor does he make any specific allegations regarding any shortcomings in investigating these purported incidents, or sufficiently allege how the inadequate investigations of some unnamed, undescribed other body cavity searches could be the "moving force" behind the violation of Plaintiff's rights in this case. Furthermore, as Plaintiff points out in his response, MNPD actually has a policy prohibiting the kinds of searches alleged to have occurred in this case, and the search as characterized by Plaintiff actually violated that policy. Doc. No. 87 at 32-33.

*Id.*, p. 2. (Footnote omitted.)

Defendant Metro Govt. additionally argues that Plaintiff's cannot use this one incident to establish that Metro Govt. must have a custom, policy, or practice of allowing illegal body cavity searches to occur. *Id.* Defendant Metro Govt. notes that deliberate indifference requires a showing of prior instances of unconstitutional conduct. *Id.*, p. 2-3. As to Plaintiff's state-law claim against it, Defendant Metro Govt. argues that this Court should decline to exercise supplemental jurisdiction over that claim, since Plaintiff cannot sustain his federal claims against it. *Id.*, p. 3.

As discussed above, Plaintiff has withdrawn his unlawful detention claim and Defendant Metro Govt.'s Motion should be GRANTED with respect to that claim. Regarding Plaintiff's allegations that Metro Govt. is liable to him for the alleged failure to train its officers on the issue of body cavity searches and alleged failure to properly investigate incidents of body cavity searches, Plaintiff's allegations are speculative, conclusory, and limited to the single incident at issue. Plaintiff has failed to provide any well-pled factual support for his assertion that any unconstitutional body cavity search of Plaintiff was caused by a municipal custom, policy, or practice. Additionally, Plaintiff fails to allege prior instances of unconstitutional conduct

31

demonstrating that Defendant Metro Govt. ignored a history of abuse and had been clearly on notice that the training in the area of body cavity searches was deficient and likely to cause injury. *See, e.g., St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir. 2005); *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). Absent such, Plaintiff cannot sustain his § 1983 municipal liability claim against Defendant Metro Govt., and Defendant Metro Govt.'s Motion to Dismiss should be GRANTED.

Because the undersigned recommends dismissal of Plaintiff's federal claims against Defendant Metro Govt., the undersigned further recommends that this Court decline to exercise its supplemental jurisdiction over Plaintiff's state-law claim against Defendant Metro Govt.

## F.  Defendant Keith McNamara's Motion to Dismiss (Docket No. 79)

Defendant Keith McNamara filed his Motion to Dismiss, accompanying Exhibits, and supporting Memorandum of Law on April 29, 2015. Docket Nos. 79, 79-1, 79-2, 79-3, 80. Defendant McNamara argues that Plaintiff's three claims against him should be dismissed because: (1) he is qualifiedly immune; (2) Plaintiff has failed to plead that Defendant McNamara's actions violated his well-established constitutional rights; (3) the intra-corporate conspiracy doctrine applies and bars Plaintiff's § 1985(3) conspiracy claims since Defendant McNamara works for Metro Govt. and acted within the scope of his employment; and (4) Defendant McNamara did not "conduct or cause to be conducted" a body cavity search, such that he cannot be held liable under Tenn. Code Ann. § 40-7-121. *Id.*

As discussed, Plaintiff has filed one Consolidated Response addressing all six of the instant Motions. Docket No. 87. With respect to Defendant McNamara specifically, Plaintiff notes that Defendant McNamara's arguments are "essentially the same as raised by other

32

defendants" and he incorporates by reference his earlier responses thereto. *Id.*, p. 33-34.

As noted above, Defendant McNamara filed a joint Reply with Defendants Brewer, Hampton, and Dunaway. Docket No. 96. Because these arguments have been recounted above, the undersigned will not repeat them.

Plaintiff's sole allegation against Defendant McNamara specifically is that he did not submit "any use of force reports" or report the "unlawful digital rectal search to the superiors in the department, all in an apparent cover-up of what happened." Docket No. 53, ¶ 44. Plaintiff levies no facts that Defendant McNamara in any way knew that a body cavity search would take place, much less that he observed, participated in, or approved of, the search of Plaintiff.

As an initial matter, Plaintiff has cited no authority for the proposition that there is a constitutional right to have a report filed. Additionally, Plaintiff has not demonstrated that Defendant McNamara's alleged failure to file said report caused him injury; rather, Plaintiff alleges that his injuries resulted from the digital search.

Regarding Plaintiff's general allegations against the individual police officers as a group, as discussed above, Plaintiff's allegations are speculative, conclusory, and unsustainable.

Taking the facts in the light most favorable to Plaintiff, Plaintiff's factual allegations simply do not demonstrate that Defendant McNamara violated his constitutional rights. Thus, Plaintiff cannot sustain his § 1983 claims against him, and those claims should be DISMISSED. Moreover, Plaintiff has not rebutted Defendant McNamara's affirmative defense of qualified immunity.

Additionally, for the reasons discussed above, Plaintiff cannot sustain his § 1985(3) conspiracy claim and that claim should likewise be DISMISSED. Because Plaintiff's federal

claims should be DISMISSED against Defendant McNamara, this Court should decline to exercise its supplemental jurisdiction over Plaintiff's state-law claim against him. The undersigned therefore recommends that Defendant McNamara's Motion to Dismiss (Docke4t No. 79) be GRANTED.

### IV.  Conclusion

For the reasons discussed above, the undersigned recommends that: (1) Defendant Norris' Partial Motion to Dismiss (Docket No. 59) be GRANTED, and that Plaintiff's unlawful detention/false arrest claim and conspiracy claims against him be DISMISSED[10]; (2) Defendant Logan's Motion to Dismiss (Docket No. 62) be GRANTED, and that Plaintiff's claims against it be DISMISSED[11]; (3) Defendant Kevin Crotts' Motion for a Partial Dismissal of Plaintiff's First Amended Complaint (Docket No. 68) be GRANTED as to Plaintiff's unlawful detention / false arrest claim and conspiracy claims, and that those claims against him be DISMISSED, but DENIED AS MOOT with regard to Counts I, III, V, and VIII, as those claims are not asserted against him[12]; (4) Defendants Tim Brewer, William Hampton, and James Dunaway's Motion to

---

[10] As noted, because Defendant Norris' Motion is a *Partial* Motion to Dismiss which seeks dismissal of Plaintiff's unlawful detention / false arrest claims and conspiracy claims, only those claims should be dismissed; Plaintiff's remaining claims against him should proceed at this juncture.

[11] As noted, Plaintiff's sole federal claim against Defendant Logan's is his § 1983 claim. Because the undersigned recommends that Defendant Logan's Motion to Dismiss be granted, the undersigned recommends that this Court should decline to exercise its supplemental jurisdiction over Plaintiff's negligence claims against Defendant Logan's, and Defendant Logan's should be terminated as a party to this action.

[12]  Because Defendant Crotts' Motion seeks *partial* dismissal of the claims discussed, only those claims should be dismissed; Plaintiff's remaining claims against him should proceed at this juncture.

Dismiss (Docket No. 71) be GRANTED, and that Plaintiff's claims against them be DISMISSED; (5) Defendant Metro Govt.'s Motion to Dismiss (Docket No. 75) be GRANTED, and that Plaintiff's claims against it be DISMISSED; and (6) Defendant Keith McNamara's Motion to Dismiss (Docket No. 79) be GRANTED, and that Plaintiff's claims against him be DISMISSED.

In light of the foregoing, the undersigned recommends that Plaintiff's claims against Defendants Logan's Roadhouse, Inc., Tim Brewer, William Hampton, James Dunaway, Metro Govt., and Keith McNamara be DISMISSED and that they be TERMINATED as Defendants in this action. The undersigned further recommends that claims discussed herein against Defendants Norris and Crotts be DISMISSED, but that Plaintiff's remaining claims against them proceed. Accordingly, Defendants Norris and Crotts should remain parties in this action.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____

E. CLIFTON KNOWLES
United States Magistrate Judge