UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERALD WIGGINS, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:14-cv-01950 |
| | ) CHIEF JUDGE CRENSHAW |
| METROPOLITAN GOVERNMENT OF NASHVILLE-DAVIDSON COUNTY, TENNESSEE, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Jerald Wiggins ("Wiggins") brings this action under 42 U.S.C. §§ 1983 and 1985 and Tennessee law against the Metropolitan Government of Nashville-Davidson County, Tennessee ("Metro") and six Metropolitan Nashville Police Department ("MNPD") officers – Kevin Crotts, Matthew Norris, James Dunaway, William Hampton, Keith McNamara, and Tim Brewer ("Officer Defendants"). Wiggins' claims arise out of a body cavity search that allegedly occurred in a public restroom at a Logan's Roadhouse restaurant ("Logan's").[1]

Before the Court is the Magistrate Judge's Report and Recommendation (Doc. No. 99) on the pending Motions to Dismiss, Wiggins' Objections (Doc. No. 100), and the Defendants' Responses thereto (Doc. Nos. 102-107). For the following reasons, the Report and Recommendation will be **ADOPTED**.

---

[1] Wiggins also sued Logan's, but that party has been dismissed pursuant to a stipulation. (Doc. No. 117.) Logan's Motion to Dismiss (Doc. No. 62) is therefore moot.

I. BACKGROUND[2]

On or about October 7, 2013, one or more of the Officer Defendants approached Wiggins in the Logan's parking lot in Madison, Tennessee, and accused him of criminal conduct. (Doc. No. 53 at 2.) The Officer Defendants situated their vehicles behind Wiggins' car in such a way that Wiggins could not leave, drew their service weapons, and pointed them at Wiggins. (Id.) Crotts approached and questioned a white male parked adjacent to Wiggins, Jackie Carter, while Norris approached and questioned Wiggins, who is African-American male. (Id. at 2-3.) Carter claimed that Wiggins sold him drugs. (Id. at 3.) At that point, Crotts ordered Norris to arrest Wiggins and place him in handcuffs. (Id.) Norris handcuffed Wiggins and made him sit on the ground beside his car. (Id.) The other Officer Defendants appeared on the scene and commenced a search of Wiggins' car. (Id.)

Four to five of the Officer Defendants, including Norris and Crotts, put on purple surgical gloves and starting chanting "nuts and butts, nuts and butts." (Id.) Crotts asked Wiggins if he had anything on him and stated that if Wiggins did, Wiggins was "going down." (Id.) Crotts then told Wiggins that he would be taken into the Logan's restroom to be searched. (Id.) Either Crotts or Norris contacted their supervisor, Sergeant Dunaway, and obtained his approval to conduct a "more in-depth" search of Wiggins. (Id.) Wiggins protested and said he did not feel comfortable going into a public bathroom. (Id.) Nevertheless, Crotts pushed him through the door of the Logan's and asked the General Manager if he could use the restaurant bathroom for a search of Wiggins. (Id.) The General Manager agreed. (Id.)

Once in the bathroom with Crotts and Norris, Wiggins again protested. (Id.) While Wiggins remained handcuffed, Crotts pushed Wiggins over a sink with one hand on Wiggins' neck and

---

[2] All facts are drawn from the Amended Complaint (Doc. No. 53).

with the other hand started to remove Wiggins' pants and underwear. (Id.) Wiggins volunteered to squat and cough. (Id.) In response, Crotts said, "no, that ain't going to get it. I got to go in you." (Id.) Wiggins started to resist, told Crotts that he was "not going to let him go in his ass," and asked to be taken to a hospital. (Id. at 3-4.) Crotts became extremely angry and hit Wiggins with his closed fist on his face. (Id. at 4.) Norris stood by or assisted while this was happening. (Id.) After the punch, Wiggins was thrown to the ground by both Crotts and Norris and put face down on the dirty public restroom floor with his pants and underwear pulled down. (Id.) While held down by Norris, Crotts proceeded to penetrate Wiggins' rectum with his finger in search of drugs. (Id.) Wiggins yelled loud so loud that he was heard by the General Manager and several patrons eating their meals in close proximity to the bathroom. (Id.) Upon hearing the yelling, the General Manager went to the back of the Logan's where the other Officer Defendants were congregated and informed them of it. (Id.) Two of the other Officer Defendants responded to the bathroom. (Id.) Some of the restaurant patrons were so disturbed by Wiggins' yelling for help that the General Manager had to offer them free meals. (Id. at 4-5.)

After Crotts completed the rectal digital penetration, he and Norris further discussed what had just occurred while leaving Wiggins on the floor fully exposed and still handcuffed with his hands behind his back. (Id. at 4.) Wiggins was then escorted back outside where the other Officer Defendants taunted him about letting Jackie Carter go free. (Id.) Jackie Carter, a white man, was not forced to submit to a digital rectal penetration like Wiggins, an African-American man. (Id.) All the Officer Defendants are white. (Id.)

In drafting the affidavit of complaint against Wiggins, Crotts failed to mention that he punched Wiggins or that Wiggins had yelled for help and resisted the search. (Id.) Norris filed false reports failing to detail what had actually happened in the bathroom and claiming that

3

Wiggins gave his consent for a strip search. (Id.) After Wiggins was arrested and in jail, his girlfriend, Kara Childers, filed a complaint on Wiggins' behalf with Metro's Office of Professional Responsibility. (Id. at 5.) Even though Sergeant Dunaway had given the approval to conduct a more "in-depth" search of the plaintiff in the Logan's public bathroom, Dunaway was assigned to conduct the investigation. (Id.) As part of the investigation, Dunaway interviewed Norris. (Id.) On the next day, Norris drafted a supplemental report in which he claimed that after "retrieving the narcotics, Mr. Wiggins began to yell and scream in an attempt to create a disturbance." (Id.) This part of the supplemental report was never mentioned in any previous statements made by Norris. (Id.) As part of the investigation, Dunaway interviewed Crotts. (Id.) Crotts referred to his original report and stated that everything he did was pursuant to MNPD policy. (Id.) None of the other Officer Defendants submitted use of force reports or reported the digital rectal search to superiors in the MNPD. (Id.) Dunaway concluded that both Crotts and Norris "conducted themselves with professionalism, and at no point was force used against Jerald Wiggins nor was he abused physically or verbally." (Id.)

Wiggins was charged in a two-count indictment. Count One alleged that Wiggins was in possession with intent to sell over .5 grams of cocaine. (Id.) This count was in reference to drugs pulled out of Wiggins' rectum after the digital penetration by Crotts. (Id.) Count Two was for the sale of less than .5 grams of cocaine. (Id. at 6.) This was in reference to the drugs that were alleged to have been sold to Jackie Carter in the Logan's parking lot before Wiggins was taken into the Logan's restroom. (Id.) Wiggins pled guilty to Count Two, and Count One was dismissed by the State of Tennessee. (Id.) None of the Defendant Officers were disciplined or counseled in any way about this incident. (Id.)

The Amended Complaint brings (a) § 1983 claims against Metro (Count I) and the Officer Defendants (Count II); (b) § 1985 conspiracy claims against the Officer Defendants (Count IV); (c) a Tennessee state law assault and battery claim against Defendants Crotts and Norris (Count VI); and (d) a claim under T.C.A. § 40-7-121 against the Officer Defendants (Count VII) and Metro (Count VIII) based on an improper body cavity search under state statute.

The Defendants filed Motions to Dismiss. (Doc Nos. 59, 62, 68, 71, 75, 79.) Norris and Crotts filed partial motions, moving to dismiss only the § 1983 unlawful detention and § 1985 claims. (Doc. Nos. 59, 68.) All other Defendants moved to dismiss all claims against them. (Doc. Nos. 71, 75, 79.) Wiggins filed a Consolidated Response to the Motions to Dismiss. (Doc. No. 87.) In that response, Wiggins clarified that he had not intended to make an unlawful detention claim and that his § 1983 claims were based solely upon assertions of unlawful search/excessive force. (Id. at 5, 27.) The Defendants filed Replies. (Doc. Nos. 94, 95, 96, 97.)

On November 25, 2015, the Magistrate Judge issued a Report and Recommendation ("R&R") on the Motions to Dismiss. (Doc. No. 99.) In relevant part, the Magistrate Judge recommended that (1) Defendant Norris and Crotts' Partial Motions to Dismiss be granted and (2) all other full Motions to Dismiss be granted. (Id. at 34-35.) He further recommended that all Defendants be terminated from this action except for Norris and Crotts, against whom the remaining charges would proceed. (Id. at 35.) Wiggins timely filed Objections to the R&R (Doc. No. 100), and the Defendants filed Responses (Doc. Nos. 102-107.)

On March 24, 2016, Senior Judge William J. Haynes, Jr., set aside the Report and Recommendation and dismissed this action for lack of jurisdiction.[3] (Doc. Nos. 108-09.) Wiggins

---

[3] Judge Haynes ruled that Wiggins' claims were barred by collateral estoppel and the doctrine of Heck v. Humphrey, 512 U.S. 477 (1994). (Doc. No. 108.)

appealed Judge Haynes's decision to the U.S. Court of Appeals for the Sixth Circuit. The Appeals Court subsequently reversed Judge Haynes's order on jurisdiction and remanded for further proceedings.[4] (Doc. No. 116.) On June 1, 2017, the Court issued an Order reopening the Partial Motions to Dismiss, the Motions to Dismiss, the Magistrate Judge's R&R, Wiggins' Objections to the R&R, and the Defendants' Responses thereto. (Doc. No. 124.) The matter is now ripe for decision.

II.  STANDARD OF REVIEW

Rule 12(b)(6) governs dismissal for failure to state a claim upon which relief can be granted and requires the Court to take all the factual allegations in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id.

III.  ANALYSIS

The Court has carefully reviewed the Amended Complaint, the Motions to Dismiss, the R&R, the Objections, and the Responses, and the Court has conducted a de novo review of the record.

A.  **Capacity of Individual Defendants**

As an initial matter, the Magistrate Judge found that Wiggins "sues the individual Defendants solely in their official capacities as 'sworn police officers'" because Wiggins did not

---

[4] This matter was transferred to the docket of the undersigned upon the retirement of Senior Judge Haynes.

"specify the capacity" in which he brought this action against them. (Doc. No. 99 at 7 (citing Wells v. Brown, 891 F.2d 591 (6th Cir. 1989))). Wiggins objects to this conclusion. (Doc. No. 101 at 2-4.) While Wiggins concedes that the Amended Complaint does not specifically designate whether his claims against the Officer Defendants are individual or official capacity claims, Wiggins argues that the Officer Defendants were nonetheless on notice that they were being sued in their individual capacities. (Id.)

The Sixth Circuit has explained that failure to "explicitly state whether a defendant is sued in his or her 'individual capacity' [] is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." Moore v. City of Harriman, 272 F.3d 769, 772 (6th Cir. 2001). Although other courts have read Wells to establish a per se rule requiring § 1983 plaintiffs to affirmatively plead "individual capacity" in the complaint, see, e.g., Biggs v. Meadows, 66 F.3d 56, 60 (4th Cir. 1995), the Sixth Circuit has not applied such a strict interpretation. In Whittington v. Milby, 928 F.2d 188 (6th Cir. 1991), the court stated that "[u]nder Wells v. Brown, absent *any* indication that these defendants are being sued individually, we must assume that they are being sued in their official capacities. . . ." Id. at 193 (citation omitted) (emphasis added). In Brooks v. Am. Broad. Cos., Inc., 932 F.2d 495 (6th Cir. 1991), the court reaffirmed that "[a]ll a [§ 1983] complaint need do is afford the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" Id. at 497 (quoting Jones v. Duncan, 840 F.2d 359, 361 (6th Cir. 1988) (internal quotes and citations omitted)). While it is "clearly preferable" that plaintiffs explicitly state whether a defendant is sued in his or her individual capacity, see, e.g., Hardin v. Straub, 954 F.2d 1193, 1200 (6th Cir. 1992), failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice. Moore, 272 F.3d at 772.

Here, the course of proceedings indicates that the Officer Defendants had "actual knowledge of the potential for individual liability" because Wiggins repeatedly referred to them "individually," Wiggins requested compensatory and punitive damages, none of the Officer Defendants moved to dismiss Wiggins' claims on the basis of insufficient notice, and each Officer Defendant raised a qualified immunity defense. See Shepherd v. Wellman, 313 F.3d 963, 968 (6th Cir. 2002) ("[W]e consider the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability."). Thus, the Court concludes that Wiggins sues the Officer Defendants in their individual capacities. Moore, 272 F.3d at 772 n.1 (citation omitted). Wiggins' objection is, therefore, sustained.

### B. § 1985 Conspiracy Claims Against All Officer Defendants

The Magistrate Judge found that the Amended Complaint failed to plead the required allegations for Wiggins to maintain a § 1985 conspiracy claim against any of the Officer Defendants. (Doc. No. 99 at 16, 24, 28-29.) Wiggins objects. Wiggins argues that "Defendants conspired to subject the plaintiff to a humiliating anal penetration because of his race. In furtherance of the conspiracy, Defendants handcuffed the plaintiff and forced him to submit to a digital rectal exam in a public place but did not subject the white co-accused to submit to such a search." (Doc. No. 101 at 4-5.)

To state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege:

(1) a conspiracy;

(2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws;

8

(3) an act in furtherance of the conspiracy;

(4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Vakilian v. Shaw, 335 F.3d 509, 518 (6th Cir. 2003) (quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983)). "The acts which are alleged to have deprived the plaintiff of equal protection must be the result of class-based discrimination." Id. (citing Newell v. Brown, 981 F.2d 880, 886 (6th Cir. 1992)). Conspiracy claims must be pled with "some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient . . . ." Pahssen v. Merrill Cnty. Sch. Dist., 668 F.3d 356, 368 (6th Cir. 2012) (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

Here, Wiggins' allegations regarding a body cavity search "establish the requisite act in furtherance of a conspiracy and the requisite injury." See Maxwell v. Dodd, 662 F.3d 418, 422 (6th Cir. 2011). But the Sixth Circuit also requires specific allegations that there was an agreement and that the agreement was driven by the plaintiff's membership in a protected class. Id. at 422-23. In Maxwell, the plaintiff brought a § 1985 conspiracy claim against Secret Service officers who allegedly made derogatory remarks about her race and gender during a search of her home. Id. at 423. The Court held that the district court did not err in granting the officers judgment as a matter of law, stating that "the use of derogatory racial terms by itself no more proves the existence of a racially-motivated conspiracy than the existence of a conspiracy by itself proves that it was racially motivated." Id (citing Smith v. Thornburg, 136 F.3d 1070, 1078 (6th Cir. 1998)).

Here, Wiggins alleges that he is an African-American male and that the Officer Defendants are white. (Doc. No. 53 at ¶¶ 14, 37). Wiggins alleges that "Jackie Carter, a white male who admitted that he was in possession of drugs, was not forced to submit to a digital rectal penetration like the plaintiff." (Id. at ¶ 37.) Wiggins also alleges that, after he was arrested and handcuffed but

9

prior to the search, "[f]our to five of the individually named officers, including Norris and Crotts" put on surgical gloves and chanted "nuts and butts, nuts and butts." (Id. at ¶¶ 15, 18, 20). This alleged taunting offers less evidence of racial discrimination than in Maxwell, where even racial epithets were not enough to support a § 1985 conspiracy claim. 662 F.3d at 423. Even taking Wiggins' allegations as true, Wiggins fails to make more than conclusory allegations that the purpose of the conspiracy was to deprive him of his rights due to his race. See Maxwell, 662 F.3d at 423. Accordingly, the Magistrate Judge did not err in recommending that Wiggins' § 1985 conspiracy claim against the Officer Defendants be dismissed as insufficiently specific. Wiggins' objection is overruled and the § 1985 conspiracy claims will be dismissed.

### C. Wiggins' § 1983 Claims against Brewer, Hampton, and McNamara

The Magistrate Judge recommended that Wiggins' § 1983 claims against Officers Brewer, Hampton, and McNamara be dismissed on the dual grounds that (1) Wiggins' factual allegations do not demonstrate that these Officers violated Wiggins' constitutional rights and (2) Wiggins has not rebutted these Officers' affirmative defense of qualified immunity. (Doc. No. 99 at 24-29.) Wiggins objects. Wiggins argues that the Amended Complaint "clearly implies" that these Officers "knew what was about to happen and failed to intervene and also made it possible by remaining outside to ostensibly guard the scene." (Doc. 101 at 9-10.) In response, Hampton, Brewer, and McNamara continue to maintain that they are entitled to qualified immunity because they did not violate any of Wiggins' clearly-established constitutional rights. (Doc. Nos. 103, 106, 120.)

Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from liability for civil actions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Caudill v. Hollen, 431 F.3d 900, 911 (6th

Cir. 2005). In determining whether qualified immunity applies, courts employ a two-part test: (a) whether "the facts alleged show the [defendant's] conduct violated a constitutional right," Saucier v. Katz, 533 U.S. 194, 201 (2001), and (b) whether the constitutional right at issue has been "clearly established" under the law, Cope v. Heltsley, 128 F.3d 452, 458 (6th Cir. 1997). "The court may address these prongs in any order, and if the plaintiff cannot make both showings, the officer is entitled to qualified immunity." Brown v. Lewis, 779 F.3d 401, 412 (6th Cir. 2015) (citing Pearson v. Callahan, 555 U.S. 223, 235-36 (2009)).

The Amended Complaint does not allege any facts that Brewer, Hampton, or McNamara participated in the body cavity search of Wiggins. Thus, the only possible claim Wiggins could bring against them is a "failure to intervene" claim for their alleged failure to stop Crotts and Norris from conducting the body cavity search. A "failure to intervene" claim requires a showing that the defendant has observed or has reason to know that a constitutional violation is occurring or has occurred. See Jacobs v. Village of Ottawa Hills, 5 F. App'x 390, 395 (6th Cir. 2001); Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997) (citing Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).

The Amended Complaint falls far short of alleging facts sufficient to support an inference that Brewer, Hampton, or McNamara observed or had reason to know that an unconstitutional body cavity search was being performed in the Logan's bathroom. Wiggins alleges that these officers observed three events – (a) the chanting of "nuts and butts"; (b) Norris and Crotts putting on surgical gloves; and (c) Norris and Crotts taking Wiggins to the Logan's bathroom. There is no specific allegation that Brewer, Hampton, or McNamara had any actual knowledge that Norris and Crotts intended to punch Wiggins in the face or conduct an invasive body cavity search. Moreover, there is no factual allegation linking the chant of "nuts and butts" to those actions as opposed to a

11

strip search. Finally, the simple act of putting on gloves to search an alleged drug dealer cannot be said to put these Officers on actual notice of a body cavity search as opposed to a pat-down or a strip search, which would have both comported with MNPD policy.[5] (See Doc. No. 119-1.) In short, the facts pleaded do not allege that Brewer, Hampton, and McNamara violated Wiggins' constitutional rights by failing to intervene, because there was never any indication to them that a rectal body cavity search would occur and, as pleaded, they had no opportunity to stop the search when it was occurring.[6] Accordingly, Brewer, Hampton, and McNamara are entitled to qualified immunity. Wiggins' objection is overruled and these claims will be dismissed.

### D. Wiggins' § 1983 Claim Against Dunaway

The Magistrate Judge recommended that Wiggins' § 1983 claim against Sergeant Dunaway be dismissed because (1) there is nothing to suggest that Dunaway had any knowledge that any search beyond a strip search would occur, (2) he was not present on the scene, and (3) did not participate in the body cavity search. (Doc. No. 99 at 27-28.) Wiggins objects. Wiggins argues

---

[5] A court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim without converting the motion into one for summary judgment. See Realtek Indus., Inc. v. Nomura Secs., 939 F. Supp. 572, 575 n.1 (N.D. Ohio 1996); Hudson v. Genesee Intermediate Sch. Dist., No. 14-11939, 2015 WL 128030, at *2 (E.D. Mich. Jan. 8, 2015). Police policies and manuals qualify as matters of public record. See Leisure v. City of Cincinnati, 267 F. Supp. 2d 848, 852 n.1 (S.D. Ohio 2003) (court took judicial notice of the city's police procedure manual as a matter of public record in adjudicating a motion to dismiss); see also Driebel v. City of Milwaukee, 298 F.3d 622, 631 n.2 (7th Cir. 2002) (The Milwaukee Police Department Manual "contains the rules and regulations duly promulgated by the chief of police . . . and published for use in the normal course of business by the [MPD]. Thus, we may take judicial notice of any portions of the manual that are relevant to our analysis.").

[6] The Amended Complaint also includes the allegation that these Officers went to the bathroom after the General Manager of Logan's reported Wiggins' yelling to them. By that time, however, the alleged search was over. This is not, therefore, an allegation that supports a claim of failure to intervene. There is also an allegation in the Amended Complaint that these Officers failed to file use of force reports. This, however, cannot form the basis for a constitutional violation, because there is no constitutional right to have a use of force report filed. Jones v. Cannon, 174 F.3d 1271, 1286 (11th Cir. 1999).

Sergeant Dunaway's granting of permission for a "more in-depth" search *could* be "police code" for authorizing an improper body cavity search rather than a strip search, such that Dunaway could be held liable even though he was not present at the scene and did not participate in the search. (Id.)

Under § 1983, there is no respondeat superior or vicarious liability. See Collins v. City of Harker Heights, Tex., 503 U.S. 115, 122 (1992). When suing an individual actor for constitutional violations under § 1983, a plaintiff must demonstrate that the actor "directly participated" in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). Here, Wiggins relies on nothing more than speculation and conjecture in arguing that Crotts and Norris' absent superior, Sergeant Dunaway, implicitly authorized or approved of something other than a private strip search. Dunaway is not alleged to have participated in chanting "nuts and butts," nor to have observed Crotts and Norris put on surgical gloves, nor to have been aware that Crotts punched Wiggins, nor to have been aware of anything that actually occurred in the Logan's bathroom. (Doc. No. 53, passim.) Wiggins offers no factual allegations that support drawing the reasonable inference that authorizing a "more in-depth" search somehow referenced an illegal public body cavity search as opposed to a strip search rendered pursuant to MNPD policy.

Accordingly, because Wiggins has not pleaded facts to support the inference that Sergeant Dunaway violated Wiggins' constitutional rights, Wiggins' objection is overruled and this claim will be dismissed.

### E.     Wiggins' § 1983 Municipal Liability Claim against Metro

The Magistrate Judge recommended that the § 1983 municipal liability claim against Metro be dismissed (Doc. No. 99 at 30-31.) The Magistrate Judge concluded:

> Regarding Plaintiff's allegations that Metro Govt. is liable to him for the alleged failure to train its officers on the issue of body cavity searches and alleged failure to properly investigate incidents of body cavity searches, Plaintiff's allegations are speculative, conclusory, and limited to the single incident at issue. Plaintiff has failed to provide any well-pled factual support for his assertion that any unconstitutional body cavity search of Plaintiff was caused by municipal custom, policy, or practice. Additionally, Plaintiff fails to allege prior instances of unconstitutional conduct demonstrating that Defendant Metro Govt. ignored a history of abuse and had been clearly on notice that the training in the area of body cavity searches was deficient and likely to cause injury.

(Doc. No. 99 at 31-32 (internal citations omitted).) Wiggins objects. (Doc. No. 101 at 10-11). Although not clearly stated, in his Objections, Wiggins appears to advance three arguments: (1) Dunaway was the "final decisionmaker" with regard to "in-depth" searches; (2) Metro had a policy to inadequately train and supervise its subordinates; and (3) Metro had a custom of tolerance for violating federal rights.

Section 1983 creates a federal cause of action against "[e]very person who, under color of [law,] . . . subjects . . . any citizen . . . to the deprivation of any rights . . . secured by the Constitution." 42 U.S.C. § 1983. Though municipalities are "persons" within the meaning of § 1983, they "may not be sued . . . for an injury inflicted solely by [their] employees or agents," Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); they bear responsibility only for "their own illegal acts," Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79 (1986). To raise a municipal liability claim under § 1983, Wiggins must demonstrate that an alleged federal violation occurred because of a municipal policy or custom. Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013) (citing Monell, 436 U.S. at 694). The Sixth Circuit has explained that there are four possible ways to demonstrate the existence of an illegal policy or custom:

(1) the existence of an illegal official policy or legislative enactment;

(2) that an official with final decision making authority ratified illegal actions;

(3) the existence of a policy of inadequate training or supervision; or

(4) the existence of a custom of tolerance or acquiescence of federal rights violations.

Id. (citing Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005)). A single decision can constitute a policy, if that decision is made by an official who "possesses final authority to establish municipal policy with respect to the action ordered," Pembaur, 475 U.S. at 480–81, which means that his decisions are "final and unreviewable and are not constrained by the official policies of superior officials." Miller v. Calhoun Cnty., 408 F.3d 803, 814 (6th Cir. 2005) (internal quotation marks omitted).

As to his first theory, Wiggins argues that, because Dunaway was "the final decisionmaker with respect to 'in-depth searches,'" Metro is liable for Dunaway's failure "to require a private area to conduct the search where others could supervise the actions" of Crotts and Norris. (Doc. No. 101 at 11.) While Dunaway may have had authority over the Officer Defendants at the scene of Wiggins' arrest, there is no allegation that he had final, unreviewable authority, unrestrained by senior officials, to establish MNPS policy regarding searches. Thus, the Court concludes that Dunaway's single decision could not represent the official policy of Metro. See Flagg v. City of Detroit, 715 F.3d 165, 174 (6th Cir. 2013); Burgess, 735 F.3d at 479.

Wiggins' two remaining theories of municipal liability are also unsustainable. Wiggins asserts that Metro failed to train and supervise its subordinates regarding searches, and that Metro had a custom of tolerance for violations as exhibited by its failure to investigate incidents of misconduct and failure to discipline Crotts and Norris. These theories of municipal policy require allegations of prior instances of unconstitutional conduct. See Miller v. Sanilac Cty., 606 F.3d 240,

255 (6th Cir. 2010) (quoting Fisher v. Harden, 398 F.3d 837, 849 (6th Cir. 2005)) ("To establish [a systematic failure to train], the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'"); Nouri v. Cty. of Oakland, 615 F. App'x 291, 296 (6th Cir. 2012) (dismissing a plaintiff's custom-of-tolerance claim in part because the complaint did not set forth a "clear and persistent pattern" of misconduct). Because Wiggins fails to allege any facts that support a reasonable inference of a pattern of prior conduct, Wiggins cannot survive a motion to dismiss. See Burgess, 735 F.3d at 478. Accordingly, Wiggins' objection is overruled and this claim will be dismissed.

### F. Claims under T.C.A. § 40-7-121-(f) against Brewer, Hampton, McNamara, Dunaway, and Metro

The Magistrate Judge recommended that this Court should decline to exercise supplemental jurisdiction over these claims based upon the recommended dismissal of all federal claims against these Defendants. (Doc. No. 99.) Wiggins objects. (Doc. No. 101 at 12.) The Supreme Court has held that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). There is no compelling reason for this Court to hear these state law claims against Brewer, Hampton, McNamara, or Dunaway when their federal claims have been dismissed. Moreover, it is especially inappropriate to hear this lone state law claim against Metro. See Siler v. Webber, 443 F. App'x 50, 53 (6th Cir. 2011) (holding that a federal court should not provide a vehicle for state law to allow respondeat superior liability of a municipality where a federal law claim on the same grounds is prohibited). The Court will therefore overrule Wiggins' objection and decline to exercise supplemental jurisdiction over these claims.

IV. **SUMMARY**

All claims against Defendants Brewer, Hampton, McNamara, Dunaway, and Metro will be dismissed and they will be terminated from this action. The § 1985 claims against Defendants Crotts and Norris will be dismissed.

The § 1983, assault and battery, and Tenn. Code Ann. § 40-7-121(f) claims against Crotts and Norris will proceed.

V. **CONCLUSION**

For these reasons, the Court concludes that the Report and Recommendation (Doc. No. 99) will be adopted.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE